[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR CONTEMPT AND SANCTIONS
The plaintiffs, Kenneth and Nancy Johndrow, filed a four count complaint on December 22, 1988 against Architects Building Co., Inc. CT Page 156 ("ABC") and Michael Walker, president of ABC. The first count alleges that ABC breached a contract for construction of a shopping plaza known as Phelps Way in West Willington. The second count alleges that Walker breached the construction contract. In the third and fourth counts, plaintiffs allege misrepresentation and CUTPA violations by Walker.
ABC filed an answer and three count counterclaim dated February 6, 1989 and filed March 2, 1989 alleging breach of contract by the Johndrows, unjust enrichment and CUTPA violations. Walker's answer, also dated February 6, 1989 and filed March 2, 1989, asserts that Walker was not a party to the contract between the Johndrows and ABC.
By papers dated February 6, 1989 and filed March 2, 1989, ABC applied for an ex parte prejudgment remedy to secure the sum of $316,000 on its counterclaim. ABC sought to garnish Tolland Bank "as it is the agent, trustee, debtor of the plaintiffs and has concealed in its possession personal property of the plaintiffs, consisting of various loans, deposits and accounts, and is indebted to the plaintiffs." The prejudgment remedy application also sought to garnish the rents due to the plaintiffs from the Bank and other shopping plaza tenants. On February 7, 1989 the court (Vasington, J.) entered an order granting the prejudgment remedy. The parties filed a stipulation on March 2, 1989 modifying the court's order to allow the plaintiffs to collect so much of the rent payments from the shopping plaza tenants as is necessary to pay the mortgage, taxes, insurance and utilities for the Phelps Way building.
The defendant filed a "Complaint and Motion for Contempt Sanctions and Request for Order to Show Cause" on January 16, 1990, alleging that Tolland Bank had continued to disburse funds to the plaintiffs from their construction loan account until it was fully depleted in violation of the court ordered prejudgment garnishment. The defendant requests that the court find Tolland Bank in contempt of court and order the Bank to "restore a sum of funds equal to the balance of the plaintiffs'" loan account as it existed February 7, 1989 ($78,400.43), and to hold those funds as a prejudgment remedy for the defendant on their counterclaim against the plaintiffs." The defendants filed a memorandum of law in support of its motion for sanctions for contempt of court arguing that restitution is the appropriate sanction for civil contempt, and that the money in the loan account is a debt due to the plaintiffs and was thus properly subject to garnishment.
Tolland Bank filed an "Objection, Answer and Counterclaim to Defendant's `Complaint and Motion for Contempt Sanctions'" on February 20, 1990. In its accompanying memorandum of law, Tolland Bank argues that the defendant's garnishment order, while authorizing the defendant to garnish the Bank, did not comply with Conn. Gen. Stat. Sec. 52-278i and therefore did not constitute a "garnishment CT Page 157 cognizable under Connecticut law." The Bank further argues that the proceeds of a construction loan made by the Bank to the plaintiffs are not a "debt due" under the prejudgment remedy statutes. The Bank also argues that a contempt proceeding is improper and premature and that the defendant should, in the event of a judgment in its favor on the counterclaim, bring a scire facias action pursuant to Conn. Gen. Stat. Sec. 52-381 in order to collect the amount of the garnishment if the plaintiffs do not pay. The Bank seeks double damages for its attorney's fees in defending the defendant's complaint, claiming that it was filed prematurely, without probable cause in law or in fact in violation of Conn. Gen. Stat. Sec. 52-568 (a)(1).
The defendant filed a "Brief in Reply to Tolland Bank's Memorandum of Law" on February 22, 1990. A hearing was held before this court on March 26, 1990.
Conn. Gen. Stat. Sec. 52-381 provides, in part,
 If judgment is rendered in favor of the plaintiff in any action by foreign attachment, all the effects in the hands of the garnishee at the time of the attachment, or debts then due from him to the defendant, and any debt, legacy or distributive share, due or to become due the defendant from any garnishee as an executor, administrator or trustee, shall be liable for the payment of such judgment.
Section 52-381 further provides a specific remedy for the situation where a garnishee disposes of the goods or effects which he holds,
 If he has in any manner disposed of the effects of the principal in his hands when the copy of the writ was left with him, or does not expose and subject them to be taken on the execution, or does not pay to the officer when demanded the debt due the defendant at the time the copy of the writ was left with him, such garnishee shall be liable to satisfy such judgment out of his own estate, as his proper debt, if the effects or debt is of sufficient value or amount; if not, then to the value of such effects or to the amount of such debt. A scire facias may be taken out from the clerk of the court where the judgment was rendered, to be served upon such garnishee, requiring him to appear before such court and show cause, if any, to the contrary; and the plaintiff may require the defendant, and the defendant shall have the right, to disclose on oath whether he has CT Page 158 any of the effects of the effects of the debtor in his hands, or is indebted to him; and the parties may introduce any other proper testimony respecting such facts.
Scire facias is "a proceeding for the enforcement of an execution against a garnishee, generally limited to cases where the garnishee defaults, and where there has been no specific property garnished, so that it is necessary to discover and identify the property of the defendant in the possession of the garnishee." Middlesex Memorial Hospital v. New Britain National Bank, 2 CSCR 266 (March 9, 1987, Higgins, J.), quoting Ballentine's Law Dictionary, 1144 (3rd ed. 1969). The whole purpose of the scire facias proceeding is to give the garnishee the right to defend. Vidal Realtors of Westport, Inc. v. Harry Bennett Associates, Inc., 1 Conn. App. 291, 295, cert. denied,192 Conn. 804 (1984). The only issue in the scire facias proceeding is whether or not the defendant in scire facias owed a debt to the defendant in the original action. Id.
In William B. Raveis Associates, Inc. v. Kimball, 186 Conn. 329,334 (1982), the court found that a hearing on a prejudgment remedy application was not the occasion to test an applicant's rights against garnishees. The court stated,
 The extent of that [garnishment] seizure, the determination of what debts, if any, were then owed to the defendants, must await either a scire facias hearing under General Statutes Sec. 52-381; (footnote omitted) Clime v. Gregor, 145 Conn. 74, 76-77, 138 A.2d 794 (1958); or a declaratory judgment under General Statutes Section 52-235a.
Upon a judgment for the defendant ABC on its. counterclaim and upon the plaintiffs' failure to pay the amount of the judgment, the defendants may commence a scire facias action pursuant to Conn. Gen. Stat. Sec. 52-381. If, during the scire facias proceeding, it is found that the Bank improperly disbursed funds and such funds were properly subject to garnishment, under the terms of Section 52-381 the Bank may be liable to satisfy the amount of the judgment from its own estate up to the amount of the effects held or debt owed by the Bank to the plaintiffs. The parties may contest whether or not the funds of a construction loan made by the Bank to the defendants are a "debt due" in that future scire facias action. Since the specific remedy of a scire facias proceeding is available to the defendant pursuant to Section 52-381, the defendant's motion for sanctions for contempt of court is improper and premature and should be denied. Because the defendant's pleading is framed as a "Complaint and Motion for Sanctions and Request for Order to Show Cause," the "complaint" is dismissed and the "request" is denied for the reasons stated above. CT Page 159
The Bank has requested damages of double its attorneys' fees in defending the complaint pursuant to Conn. Gen. Stat. Section52-568(a)(1). Section 52-568(a)(1) provides, in part, "Any person who commences and prosecutes any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages." This section was amended in 1986 to provide for double damages where an action is prosecuted or defense asserted without probable cause, but without malicious intent.
Case law interpreting Section 52-568 prior to 1986 reveals the following: [I]n actions under our statute for vexatious suit, two of the essential allegations are (l) that no probable cause existed for instituting the. . . suit complained of, and (2) that such. . . suit terminated in some way favorable to the defendant therein." Hiers v. Cohen, 31 Conn. Sup. 305, 312 (Super.Ct. 1973). The Bank cannot allege that the suit terminated in some way favorably to the Bank because it is seeking double damages under Section 52-568
simultaneously with its reply in the action which the Bank contends is without probable cause. It does not appear that the essential elements of a suit for vexatious litigation under Section 52-568 have changed. In a case where it is asserted that a suit was brought without probable cause under the amended statute, then such a claim must be brought as a separate action after "such suit has terminated in some way favorably to the defendant therein" rather than simultaneously with the reply to the underlying suit which the Bank contends is without probable cause.
Accordingly, the Bank's motion for double damages under Section52-568(a)(1) is denied.
POTTER, J.